**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID FLOYD

    Plaintiff,

v.                                            Case No. 3:18-cv-992-J-32JBT

GEOVERA SPECIALTY
INSURANCE COMPANY,

    Defendant.

## **O R D E R**

This insurance coverage case is before the Court on Defendant GeoVera Specialty Insurance Company's Motion for Summary Final Judgment (Doc. 22), to which Plaintiff David Floyd responded. (Doc. 23). For the reasons below, the Court denies the Motion.

**I. BACKGROUND**

    **A. Floyd's Claim for Water Damage**

On September 10, 2017, GeoVera issued an all-risks property insurance policy (the "Policy") to Floyd for his Jacksonville home. (Doc. 22-1 at 1).[1] The

---

[1] Some of the parties' citations use document and page numbers that do not correspond with the Court's electronic filing system. This Order uses the document and page numbers produced by the Court's electronic filing system.

Policy covers "direct physical losses" that occurred to "[t]he dwelling on the 'residence premises'" between September 10, 2017, and September 10, 2018. (Doc. 22-1 at 1, 10, 16). As an all-risks policy, it provides coverage for all losses to covered property unless specifically excepted or excluded.[2]

At the end of January 2018, the toilet in Floyd's master bathroom overflowed, resulting in water damage throughout the home. (Doc. 23 at 1). Floyd, who was present at the time of the overflow, removed the toilet from the floor and "snaked" the plumbing drain line to stop the flooding. (Doc. 23 at 2). When Floyd pulled the snake out of the drain line, he brought with it portions of plant roots, indicating that a breach in the drain line existed at some point below his home. (Doc. 23 at 2). On February 27, 2018, Floyd notified GeoVera of the January toilet overflow and resulting water damage. (Doc. 22 at 5). Floyd did not indicate the date of the overflow in his notice, so GeoVera assigned January 24, 2018, as the date of loss. (Doc. 22 at 5).

After receiving notice of the overflow, GeoVera opened a claim and sent an adjuster to investigate the damage to Floyd's home. (Doc. 22 at 5). Floyd told the adjuster that he had to remove his toilet to snake the line immediately following the overflow, but GeoVera did not investigate the plumbing system.

---

[2] There is a difference between all-risks and named-peril insurance policies. See 10A Couch on Insurance § 148:4 (3d ed. 2019). As discussed in detail below, this difference affects the burden of proof.

(Doc. 23-1 ¶ 8; Doc 23-10 at 60–61). The adjuster estimated that the overflow caused $17,139.78 in water damage to Floyd's home. (Doc. 22 at 5). GeoVera did not dispute coverage for the water damage, paid Floyd $14,523.51,[3] and closed the claim on April 24, 2018. (Doc. 22 at 6; Doc. 23 at 5). Floyd contends that this amount is not enough to cover the cost to repair the water damage. (Doc. 23 at 5–6). Instead, Floyd asserts that the actual cash value to repair the water damage is $29,038.42. (Doc. 23 at 6).

**B. Floyd's Claim for "Tear Out" Costs**

Before filing this action, Floyd hired expert plumber William Fetzner and H2O Plumbing Solutions to inspect his plumbing system with a videoscope. (Doc. 22 at 7; Doc. 23 at 6). After reviewing the images from a videoscope performed on May 25, 2018, Fetzner stated that the cast-iron pipes comprising the drain lines of Floyd's plumbing system were "in need of replacement" and "appear[ed] deteriorated . . . with likely open areas in the bottom of the drain and rough jagged edges on [the] interior." (Doc. 22-15 at 2; Doc. 23-4 ¶ 9). After personally inspecting the plumbing system again on June 19, 2019, Fetzner further concluded that deterioration in the plumbing system caused the toilet overflow at issue. (Doc. 23-4 ¶ 13). Finally, Fetzner opined that the entire

---

[3] GeoVera applied a $1,000 deductible and $1,616.27 in depreciation to reach this number. (Doc. 22 at 6).

3

plumbing system needs to be torn out and replaced to prevent future overflows and water damage. (Doc. 23-4 ¶ 14).

GeoVera's experts, Jeff Steger and Howard Cummins, inspected the property on February 6, 2019, and May 23, 2019, respectively. (Doc. 22-16 at 94; Doc. 23-7 at 25). They identified two drain lines in the property's plumbing system. (Doc. 22 at 8). According to Steger and Cummins, plant roots had penetrated the kitchen and master bathroom drain line somewhere near the master bathroom. (Doc. 23-7 at 39; Doc. 23-8 at 22–23). Although performed nearly one year apart, the videoscopes from both parties' experts captured images of plant roots that Floyd claims are nearly identical to the ones he pulled out while snaking the line in January 2018. (Doc. 23-1 ¶ 7). Steger echoed Fetzner's observation when he concluded that the plumbing system had been subject to "deterioration . . . over several decades." (Doc. 22-16 at 25). GeoVera's experts agree that portions of Floyd's plumbing system need to be replaced; however, they dispute Fetzner's claim that the entire system needs replacing. (Doc. 22-16 at 25; Doc. 23 at 7; Doc. 23-7 at 41–42).

### C. This Action

Three months after GeoVera paid and closed the claim, Floyd filed this breach of contract action to recover from GeoVera (1) what he claims is the full amount owed for the water damage caused by the toilet overflow, and (2) the cost to tear out and repair the portions of his home necessary to access and

4

repair the plumbing system. (Doc. 23 at 5–6).[4] Floyd is not seeking the cost to repair or replace the plumbing system. (Doc. 23 at 15).

GeoVera seeks summary judgment on the grounds that (1) the Policy does not cover a loss to the plumbing system itself, (2) repair of the plumbing system was not necessary here, and (3) Floyd cannot prove that there was a direct physical loss to the plumbing system "caused by a covered cause of loss" at the time of the toilet overflow. (Doc. 22 at 2–4).

In response, Floyd argues that the Policy requires GeoVera to pay for the cost to tear out and replace portions of his home necessary to expose the plumbing system for repair because the system is deteriorated, this deterioration caused the January 2018 toilet overflow and resulting water damage, and the plumbing system needs to be repaired or replaced to prevent further damage. (Doc. 23 at 19–20).

## II. ANALYSIS

This case comes down to (1) whether the Policy covers the cost to tear out and replace portions of an insured's home necessary to access and repair a deteriorated plumbing system that caused covered water damage to the property and, if so, (2) whether Floyd's toilet overflow resulted from a clogged toilet or a deteriorated plumbing system. The first is a question of law while the

---

[4] Floyd seeks a total of $100,462.70 between the water damage and the "tear out" costs. (Doc. 23 at 5).

5

second is a question of fact. As detailed below, since the Court answers the first question in the affirmative, the second question must be resolved by the jury, precluding summary judgment.

### A. The Court's Interpretation of the Policy

Before addressing the parties' arguments, the Court will determine the Policy's scope of coverage. See Jones v. Utica Mut. Ins. Co., 463 So. 2d 1153, 1157 (Fla. 1985) ("It is well settled that the construction of an insurance policy is a question of law for the court. However, it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court . . . .") (internal citations omitted).

1. All-risks policies cover all losses unless expressly excluded.

Property insurance policies come in two forms: all-risks policies and named-peril policies. See Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So. 2d 565, 568 (Fla. 2d DCA 1984); 10A Couch on Insurance § 148:4 (3d ed. 2019). Unless the loss is expressly excluded, an all-risks policy "provides coverage for all fortuitous loss or damage other than that resulting from willful misconduct or fraudulent acts." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005). Conversely, a named-peril "policy insures only against certain named risks," such as flooding, fire, or lightning. Hudson, 450 So. 2d at 568.

The distinction between all-risks and named-peril policies is important because the burden of proof differs between the two. See Mejia v. Citizens Prop.

Ins. Corp., 161 So. 3d 576, 578 (Fla. 2d DCA 2014) ("In litigation involving an insurance claim, the burden of proof is assigned according to the nature of the policy."). In all-risks, occurrence-based policies an insured has the initial burden to show a loss to covered property during the policy's term, with the burden then shifting to the insurer to show that the policy excludes the claimed loss. See id.

GeoVera issued Floyd an all-risks, occurrence-based homeowner's property insurance policy. (Doc. 22-1 at 1). Therefore, to trigger coverage, Floyd merely needed to inform GeoVera of the water damage, which he did on February 27, 2018. (Doc. 22 at 5). At that point, the burden shifted to GeoVera to either assert an exclusion or accept coverage. See Phoenix Ins. Co. v. Branch, 234 So. 2d 396, 398 (Fla. 4th DCA 1970). GeoVera chose the latter, making it responsible for covering Floyd's water damage and then fulfilling any other coverage provisions in the Policy stemming from the covered loss. Although the sufficiency of the amount is disputed by the parties, GeoVera paid Floyd for the water damage. Thus, the question is whether the Policy requires GeoVera to provide any additional coverage related to the water damage, such as the "tear out" costs that Floyd seeks.

2. The Policy covers "tear out" costs associated with covered water damage caused by a deteriorated plumbing system.

"Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). Ambiguity exists when a policy's language is susceptible to more than one reasonable interpretation. Fayad, 899 So. 2d at 1086. However, "[t]he mere fact that an insurance provision is 'complex' or 'requires analysis' does not make it ambiguous." Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs., 872 F.3d 1161, 1164 (11th Cir. 2017) (citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003)).

Here, the Policy merely requires an analysis of interrelated provisions. Therefore, the Policy is not ambiguous and the Court will interpret it based on its plain meaning. See Cheetham v. S. Oak Ins. Co., 114 So. 3d 257, 262–64 (Fla. 3d DCA 2013) (analyzing a nearly identical policy and finding the relevant policy provisions unambiguous).

The Policy's pertinent coverage and exclusion provisions state:

**SECTION I – PERILS INSURED AGAINST**
**A. Coverage A – Dwelling And Coverage B – Other Structures**
1. We insure against direct physical loss to property described in Coverages A and B.

2. We do not insure, however, for loss:

8

>                        . . .
>    c. Caused by:
>
>                   . . .
>          (6) Any of the following:
>
>                  (a) Wear and tear, marring, deterioration;
>                        . . .
>
>          **Exception To c.(6)**
>
>          Unless the loss is otherwise excluded or limited elsewhere in the policy, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:
>
>                  . . .
>          (ii) Plumbing . . . system . . . on the "residence premises". This includes the cost to tear out and repair only that part of a building . . . on the "residence premises", necessary to access and repair the system or appliance.
>
>          The cost that we will pay for the tear out and repair above is only that cost necessary to access and repair only that portion or part of the system or appliance that caused the covered loss, whether the system or appliance, or any part or portion of the system or appliance, is repairable or not.
>
>          However, we do not cover loss:
>
>          (a) To the system or appliance from which this water or steam escaped;
>                  . . .
>          (c) To a plumbing system, whether above or below the ground, caused by:
>                  . . .
>             (iii) Deterioration, decay . . . .

(Doc. 22-1 at 16–17, 49–50).[5]

Distilled to plain English: As an all-risks policy, the Policy covers all damage to Floyd's home unless specifically excluded. Normally, the Policy does not cover damage caused by deterioration. However, under the "Exception To c.(6)," the Policy covers water damage that results from an overflow caused by a home's deteriorated plumbing system unless that damage is excluded elsewhere in the Policy. Once coverage is triggered for water damage under the "Exception To c.(6)," the Policy offers additional coverage for costs related to the deteriorated plumbing system. While the Policy does not cover the cost to repair or replace the deteriorated plumbing system itself, it does cover the cost to tear out and repair portions of the home necessary to access the deteriorated parts of the plumbing system that caused the loss.[6] Finally, the Policy provides this "tear out" coverage whether the plumbing system is repairable or not. (See Doc. 22-1 at 10, 16–17, 49–50).

Thus, if a deteriorated plumbing system caused the covered water damage to Floyd's home, then the Policy covers the "tear out" costs that Floyd

---

[5] The original Policy was modified by a "Master Endorsement – Florida." (Doc. 22-1 at 44). Notably, the Master Endorsement modified the "Exception To c.(6)." (Doc. 22-1 at 49–50). The language quoted above is the correct combination of the original Policy language and the updated language from the Master Endorsement.

[6] Examples of "tear out" costs include, but are not limited to, the cost to tear out and repair flooring and concrete, the cost to repaint walls and ceilings, and the cost to tear out and repair cabinets.

10

seeks, but only those "tear out" costs necessary to access the portions of the plumbing system that caused the loss.

### B. GeoVera's Arguments

Now that the Court has determined as a matter of law that coverage exists for "tear out" costs associated with covered water damage caused by a deteriorated plumbing system, the Court turns to the parties' arguments. GeoVera offers several arguments as to why Floyd is not entitled to "tear out" costs.

1. <u>GeoVera's argument that the Policy does not cover a loss to the plumbing system is correct, but irrelevant</u>.

GeoVera contends that it did not materially breach the Policy because the Policy does not cover repairing or replacing the plumbing system itself. (Doc. 22 at 12). While this is a correct interpretation of the Policy, it is irrelevant to the issues here. Floyd does not seek to have GeoVera pay to repair or replace the deteriorated plumbing system. (Doc. 23 at 15). Rather, he seeks to recover the "tear out" costs necessary to expose the plumbing system for a potential repair, a coverage which is enumerated in the Policy under the "Exception To c.(6)." (See Doc. 22-1 at 49–50).

2. <u>It is immaterial whether the plumbing system is repairable</u>.

GeoVera also argues that the Policy covers "tear out" costs only when repair to the plumbing system is necessary or, alternatively, that the Policy

11

does not cover "tear out" costs when replacement, rather than repair, is required. (See Doc. 22 at 14–15).

The Policy states that GeoVera will cover "tear out" costs "whether the [plumbing] system or appliance, or any part or portion of the system or appliance, is repairable or not." (Doc. 22-1 at 49) (emphasis added).[7] This makes sense because it is difficult to know if a plumbing system is repairable until it has been exposed. And, to expose it, a homeowner must incur costs to tear out portions of his home.

---

[7] While the Court did not find an ambiguity here, it considered the possibility that one exists. The Policy enumerates the "tear out" cost coverage by stating: "This includes the cost to tear out and repair only that part of a building . . . necessary to access and repair the [plumbing] system or appliance." (Doc. 22-1 at 49) (emphasis added). Since the paragraph following that provision indicates that "tear out" costs are available "whether the [plumbing] system or appliance . . . is repairable or not," (Doc. 22-1 at 49), one can appreciate the possibility for confusion. However, consistent with general principles of contract interpretation, the Court interprets these two provisions together to avoid leaving one of them meaningless or treated as "mere surplusage." See Dear v. Q Club Hotel, LLC, 933 F.3d 1286, 1293 (11th Cir. 2019). Therefore, had GeoVera wished to cover "tear out" costs only when repair is ultimately required, it would not have inserted a subsequent provision noting that "tear out" cost coverage exists whether the system "is repairable or not."

Further, even if these two clauses create an ambiguity, when a policy is considered ambiguous, Florida courts default to contra proferentum and the language regarding coverage is "construed strictly against the insurer that drafted the policy and liberally in favor of the insured." Fayad, 899 So. 2d at 1086. Accordingly, even if an ambiguity existed, GeoVera would not prevail on this argument.

If GeoVera is trying to argue that the Policy covers "tear out" costs only when repair to the plumbing system is necessary, a material issue of fact exists on whether the system needs, or can be, repaired. GeoVera argues that a repair is unnecessary because Floyd snaked the line following the January 2018 overflow, obviating the need for further repairs. (Doc. 22 at 15). However, Floyd argues that (1) more overflows occurred after January 2018, (2) GeoVera's expert Cummins agrees that merely snaking a plumbing system does not constitute a repair of the system, and (3) GeoVera's experts Cummins and Steger agree that at least a portion of the plumbing system needs to be replaced. (Doc. 23 at 17; Doc. 23-7 at 41–42; Doc. 23-8 at 65–66).

Further, in asserting the "repair vs. replacement" dichotomy, GeoVera attempts to have it both ways. On one hand, GeoVera argues that a replacement is required here, and that the Policy does not provide "tear out" coverage if a replacement, rather than a repair, is necessary. At the same time, presumably in an effort to keep costs down, GeoVera argues, and its experts state, that only portions of the plumbing system need to be replaced. (See Doc. 22 at 15–16; Doc. 23-7 at 41–42; Doc. 23-8 at 65–66). If only portions of an entire system need to be replaced, that is the same as saying the system needs to be "repaired." See Repair, Black's Law Dictionary (11th ed. 2019) ("To restore to a sound or good condition after decay, waste, injury, partial destruction, dilapidation, etc.; to fix (something broken, split, not working properly) . . . .") (emphasis added).

13

Regardless of the semantic difference between "repair" and "replace," the Policy provides "tear out" coverage whether the system is repairable or not.

### 3. Floyd did not need to show a direct physical loss to the plumbing system to trigger "tear out" cost coverage.

Finally, GeoVera contends that Floyd is not entitled to "tear out" costs because he "cannot establish that there was a direct physical loss to the plumbing [system] caused by a covered cause of loss at the time of the toilet overflow in January 2018 . . . ." (Doc. 22 at 16). Thus, GeoVera interprets its Policy to require a physical loss to the plumbing system before "tear out" coverage is triggered. However, the issue is not whether there was a direct physical loss to the deteriorated plumbing system, but whether there was a direct physical loss to covered property <u>caused by</u> the deteriorated plumbing system.

To support its argument, GeoVera cites several cases in which the "Exception To c.(6)" and "tear out" cost provisions are at issue. (<u>See</u> Doc. 22 at 17). However, each case is distinguishable for the same reason: The homeowners in those cases failed to establish a direct physical loss to anything on their property other than the deteriorated plumbing system. In other words, the deteriorated plumbing systems did not cause any covered water damage to the property. Instead of supporting GeoVera's argument, these cases reinforce the notion that the Policy covers the cost to tear out and repair portions of an

14

insured's home necessary to access and repair a deteriorated plumbing system if that plumbing system caused a covered loss to the insured's property.[8]

Here, GeoVera covered a direct physical loss to Floyd's property—the water damage caused by the overflow. Thus, Floyd's entitlement to additional "tear out" costs associated with the water damage hinges on whether the overflow was caused by a deteriorated plumbing system or a simple toilet clog. GeoVera acknowledges that "[t]he undisputed conclusion by the experts is that

---

[8] See Order on GeoVera's Motion for Summary Judgment, Bodo v. GeoVera Specialty Ins. Co., No. 8:18-cv-678-T-30AAS (M.D. Fla. Mar. 8, 2019), ECF No. 77 (granting summary judgment to insurer because homeowner failed to establish a direct physical loss to covered property, such as water damage from a toilet overflow); Homeowners Choice Prop. & Cas. v. Maspons, 211 So. 3d 1067, 1070 (Fla. 3d DCA 2017) (finding for the insurer because "[t]here was no evidence that the water exiting the pipe had caused any damage to its surroundings"); see also Cheetham v. S. Oak Ins. Co., 114 So. 3d 257, 263 (Fla. 3d DCA 2013) ("Because the claimed loss . . . was caused by the deterioration of a pipe within the plumbing system, which caused water or water-borne material emanating from the residence premises' plumbing system to back up into the residence premises, we find the Cheethams' loss is a covered loss under the policy.").

GeoVera also cites a California case which has no precedential value here; however, even if it did, it does not support GeoVera's argument. See Murray v. State Farm Fire & Cas. Co., 219 Cal. App. 3d 58, 60, 65 (Cal. Ct. App. 1990) (finding no "tear out" coverage because the homeowner merely reported a leaky pipe, not a sudden backup or overflow that caused water damage).

The final case that GeoVera cites is not on point because it involved the applicability of a water damage exclusion to damage resulting from a partially empty in-ground swimming pool that had been lifted out of the ground during a tropical storm. See Liberty Mut. Fire Ins. Co. v. Martinez, 157 So. 3d 486, 487 (Fla. 5th DCA 2015). In fact, the Martinez court did not examine the "deterioration" or "tear out" cost provisions at issue here.

the Plaintiff's cast-iron pipes on the drain line to the master bathroom are deteriorated," but goes on to argue that the overflow was caused by a clogged toilet. (Doc. 22 at 17). Since Floyd asserts that the deteriorated plumbing system caused the water damage and GeoVera disagrees, (Doc. 23-4 ¶13; Doc. 22 at 17), a genuine dispute of material fact exists, precluding summary judgment. See Cheetham, 114 So. 3d at 263 (reversing summary judgment for insurer when evidence existed of damage caused by a water backup from a deteriorated pipe).

## III. CONCLUSION

In sum, the Policy covers the cost to tear out and repair portions of Floyd's home necessary to access and repair the deteriorated plumbing system if that plumbing system caused covered water damage to the home. At this time, summary judgment is inappropriate because the parties dispute (1) whether the toilet overflow was caused by a clog or by deteriorated pipes, (2) the extent to which the plumbing system needs to be repaired, and (3) whether GeoVera paid the original water damage claim in full.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Final Judgment (Doc. 22) is **DENIED**.

2. No later than **March 23, 2020**, the parties shall provide a joint notice advising the Court of their proposed trial term. The parties should also advise whether further meditation efforts should be undertaken.

**DONE AND ORDERED** in Jacksonville, Florida this 2nd day of March, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

mbd
Copies to:

Counsel of record